UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KAREN ROBERTO,

    Plaintiff,

        v.                          No. 3:18-cv-1651(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

    Defendant.

———————————————————X

## **RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Karen Roberto's, application for Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[2] Plaintiff now moves for an order reversing the decision of the

---

[1]     The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2]     Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

1

Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 15]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. # 16]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court denies Plaintiff's motion to reverse and grants the Commissioner's motion to affirm.

## LEGAL STANDARD

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work

experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be

sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## **BACKGROUND**

### a. Facts

Plaintiff filed her SSI application on December 17, 2014, alleging disability onset date of August 4, 2014. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On March 8, 2017, a hearing was held before Administrative Law Judge I.K. Harrington ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. On April 6, 2017, the ALJ issued a decision denying Plaintiff's claim. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On August 7, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was forty-six years old on the alleged disability onset date. (R. 17). She has a high school education and has completed one year of college. (*Id.*). She is able to communicate in English. (*Id.*). Plaintiff has no past relevant work experience. (R. 67). Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 15-3]. The Court adopts this stipulation and incorporates it by reference herein.

### b. The ALJ's Decision

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act. At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since the date of her SSI application. (R. 12). At Step Two, the ALJ found Plaintiff's degenerative disc disease and anxiety disorder are severe. (*Id.*). The ALJ determined that Plaintiff's obesity, right knee pain, left wrist pain, left shoulder pain,

4

hyperlipidemia, asthma, and chronic sinusitis are not severe impairments because they have no more than minimal effects on her ability to meet the basic demands of work activity. (R. 12-14). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 14-16). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> Plaintiff can perform light work except she is capable of frequent balancing, stooping, crouching, kneeling, crawling, and climbing ramps and stairs. She is capable of occasional climbing ladders, ropes, and scaffolds. She is capable of frequent handling and fingering with the bilateral upper extremities. She is able to have occasional exposure to unprotected heights. She is able to perform simple routine tasks involving no more than simple, short instructions and simple work-related decisions, with few workplace changes. She is able to be in a non-public work setting and have occasional interaction with coworkers and supervisors.

(R. 16). At Step Four, the ALJ found Plaintiff has no past relevant work. (R. 21). Finally, at Step Five, the ALJ relied on the testimony of the VE to conclude that there are jobs existing in significant numbers in the national economy Plaintiff can perform. (*Id.*). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC can perform the positions of cleaner, laundry folder, and photocopy machine operator. (R. 22). Accordingly, the ALJ concluded Plaintiff was not disabled.

## DISCUSSION

Plaintiff makes two arguments in support of her motion to reverse, which the Court will address in turn.

1. **Characterization of the Evidence**

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

Plaintiff claims that the ALJ made a number of factual errors which deprived her of a full and fair hearing. The Commissioner responds that the ALJ characterized and evaluated the evidence correctly. The Court agrees with the Commissioner.

First, Plaintiff takes issue with a statement the ALJ made while evaluating the severity of her impairments at Step Two. In discussing the impairments he did not find severe, the ALJ said Plaintiff "sought conservative treatment for" complaints of right knee pain, left wrist pain, and left shoulder pain. (R. 13). Plaintiff posits that the ALJ's statement that she had only conservative treatment is in error because she had knee surgery in 2015. Plaintiff is correct that she had arthroscopic knee surgery in July 2015. (R. 648, 892). Despite this surgical intervention, though, there is no error in the ALJ's finding that Plaintiff's knee pain was not severe.

A medically determinable impairment, or a combination of impairments, is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922. In other words,"[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)). "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012).

Plaintiff has not established that her knee impairment was severe and does not make any arguments to support such a finding. In fact, the record shows the 2015 surgery resulted in a positive outcome. In August 2015, Plaintiff reported feeling fine post-surgery. (R. 892). She told her orthopedic surgeon in September 2015 that she was "very happy with her knee." (R.

889). The record also shows Plaintiff was routinely found to have full flexion and extension in both knees. (R. 1087-88, 1091-92, 1095-96, 1099-1100, 1104). The Court finds no error with the ALJ's analysis of the severity of Plaintiff's knee condition.

Plaintiff next argues that the ALJ mischaracterized the evidence by stating, in his RFC analysis, that she had "good results" with her neck surgery. (R. 18). The Court cannot say this statement is inaccurate. Plaintiff had an anterior cervical discectomy and fusion with plate at C5-6 and C6-7 in October 2014. (R. 214). Afterward, her neurosurgeon described Plaintiff as having a "good result" with the surgery. (R. 203). In fact, Plaintiff pronounced the surgery "successful" at a July 2013 medical appointment. (R. 620). In addition, the ALJ went on to outline the treatment Plaintiff had for her neck following the surgery. He states that she "did not seek routine treatment with a primary care physician or specialist," but instead "sought treatment as needed during exacerbations of neck pain." (R. 18). The ALJ then detailed visits Plaintiff had to the emergency room, and her subsequent establishment of pain management treatment in March 2016. (R. 18-19). The Court finds that the ALJ's discussion of Plaintiff's treatment history for her neck impairment was correct.

Plaintiff also takes issue with the ALJ characterizing the objective evidence as mild, arguing that there are significant findings in imaging studies. The Court finds that the ALJ correctly determined that Plaintiff's subjective complaints were not reasonably consistent with the objective medical evidence and correctly described that evidence. For instance, a CT scan of Plaintiff's cervical spine from May 2015 showed no evidence of fracture or subluxation and only degenerative changes. (R. 320). A lumbar spine x-ray from May 2015 showed an anomalous appearance to R L3 transverse process that was congenital or chronic, not acute, and no additional significant findings or abnormalities. (R. 324). And, a lumbar spine MRI from

September 2015 showed mild bilateral foramen encroachment at L4-5. (R. 891). The ALJ did not err in characterizing these objective findings as mild.

Finally, Plaintiff argues that the ALJ's statement about her driving was based on an inaccurate reading of the record. The Court disagrees. In evaluating the persuasiveness of Plaintiff's subjective complaints, the ALJ noted Plaintiff's statements at the hearing about her driving were not entirely consistent with statements she had made to treatment providers. Plaintiff testified at the hearing that she limits her driving to three or four miles, to local stores, and to once per week. (R. 59). There are, however, several times treatment notes state Plaintiff drives to visit her elderly father. (R. 622, 625, 648, 653). The consistency of Plaintiff's testimony with the medical record is a proper consideration in evaluating a claimant's credibility. *See Netter v. Astrue*, 272 F. App'x 54, 55 (2d Cir. 2008). In all the Court cannot say the ALJ misread the record in this regard.

2. **Supportability of the RFC**

Second, Plaintiff claims that the RFC is not supported by the medical evidence. Specifically, she argues that additional limitations were required, and that the RFC does not account for her pain symptoms. The Court finds that the ALJ's RFC determination is supported by substantial evidence.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ determines the RFC based on all of the relevant evidence in the record, including medical evidence, opinion evidence, and a claimant's subjective complaints of pain. *Id.* A claimant's RFC "'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting SSR 96–8p, 1996 WL 374184, at

8

*1 (July 2, 1996)). Before an ALJ assesses an RFC based on exertion level (*i.e.* whether the claimant is capable of sedentary, light, medium, heavy, or very heavy work), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." *Id.* (internal quotations marks omitted). The functions described in these paragraphs "include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions." *Id.* Also included are mental abilities "such as understanding, remembering, carrying out instructions, and responding appropriately to supervision." *Id.* Finally, functions also include "other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors." *Id.* While the ALJ is required to base the RFC on all relevant medical evidence, the ALJ "need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision.'" *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). When an RFC determination is supported by substantial evidence it must be affirmed. *Barry v. Colvin*, 606 F. App'x 621, 623 n. 1 (2d Cir. 2015).

Plaintiff contends the RFC should limit her to occasional exposure to environmental factors. In support of this point, Plaintiff cites to treatment records noting Plaintiff's asthma and recurring sinus infections. What Plaintiff does not do is show that the existence of these conditions translate into her needing limitations on exposure to respiratory irritants in the RFC. The evidence she points to only establishes she was treated for some respiratory issues. These records also indicate that medication was effective in relieving her symptoms. (R. 953, 955, 957). Given this, and that the record contains an opinion from the state agency medical

9

consultant at the Initial Level which assessed no environmental limitations, (R. 83), the Court finds the RFC not to be deficient in this regard.

Plaintiff additionally claims the RFC should limit her to occasional hand use, no repetitive hand use, and occasional reaching. Again, however, the record does not support a need for these additional limitations. Treatment notes show normal use of shoulders, arms, and hands. (R. 1091, 1092, 1095, 1099, 1104, 1108, 1112, 1117). Given this evidence, the Court cannot say additional limitations relating to use of the upper extremities were required.

Plaintiff also argues the RFC should limit her to being off-task occasionally. She claims the opinions of the state agency psychological consultants, who found she was moderately impaired in maintaining concentration, persistence, and pace, support an RFC limitation to time off-task.

The RFC limits Plaintiff to simple routine tasks involving no more than simple, short instructions and simple work-related decisions, with few workplace changes. (R. 16). This sufficiently accounts for Plaintiff's difficulties with concentration, persistence, and pace, as courts routinely find that a claimant who has moderate limitations in memory, concentration, and stress management can perform simple, routine, repetitive tasks. *See Worthy v. Berryhill*, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *7 (D. Conn. Mar. 27, 2017); *see also Pidgeon v. Comm'r of Soc. Sec.*, No. 15-CV-6578 CJS, 2017 WL 4680412, at *9 (W.D.N.Y. Oct. 18, 2017) (finding claimant could "engage in simple, routine tasks and/or unskilled work despite her limitations in concentration, persistence, and pace."); *Williams v. Colvin*, 98 F. Supp. 3d 614, 633 (W.D.N.Y. 2015) (finding ALJ's conclusion claimant could engage in simple tasks consistent with medical opinions that, although claimant "had mild to moderate difficulties with regard to concentration, persistence, or pace, she was capable of performing unskilled work.");

*Johnson v. Berryhill*, No. 1:17-CV-00684-MAT, 2018 WL 4539622, at *6 (W.D.N.Y. Sept. 21, 2018) (explaining that an RFC limitation to simple, routine tasks accounted for claimant's "difficulties in maintaining attention and concentration, performing complex tasks, and learning new tasks.").

Finally, Plaintiff argues that ALJ did not consider and include in the RFC limitations based on her neck, upper extremity, muscle, joint, back, and lower extremity pain. The Court finds that the ALJ properly considered Plaintiff's reports of pain in formulating the RFC.

The ALJ detailed Plaintiff's subjective complaints of pain in his decision. (R. 17). He was not required to accept those complaints without question, but rather to evaluate them along with the other evidence in the record. *See Taylor v. Astrue,* No. 3:09-cv-1049, 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010). He did so, and his conclusion that Plaintiff's subjective complaints were not entirely consistent with the medical evidence is supported by a review of the record. Treatment notes repeatedly show normal shoulder and arm strength, normal range of motion, normal motor strength, and normal gait and station. (R. 1061, 1065, 1069, 1091, 1092, 1095, 1099). Even when Plaintiff was observed to have some loss of range of motion in her upper extremities, she still had normal motor strength, normal upper extremity strength, and normal gait and station. (R. 1073, 1077, 1081, 1087, 1088). In addition, Plaintiff was routinely noted to have full flexion and extension in her knees, normal range of motion in her ankles, and full motor strength in her hips. (R. 1087-88, 1091-92, 1095-96, 1099-1100, 1104). Plaintiff was also encouraged to exercise more, which is not entirely consistent with her subjective complaints. (R. 505, 671, 673, 1040, 1042). Finally, treatment notes state Plaintiff reported medication was helping her pain symptoms and improving her functioning. (R. 1077, 1082, 1105).

In sum, the Court finds the RFC is supported by substantial evidence and no additional limitations were required.

**Conclusion**

After a thorough review of the record and consideration of all of the arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's motion to affirm and denies Plaintiff's motion to reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this 9th day of September, 2019, at Bridgeport, Connecticut.

*/s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge